UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALFRED BATES,                          )
                                       )
                    Plaintiff          )
                                       )
                                       )
        v.                             )   Civil Action No. 13-12245-KPN
                                       )
                                       )
LIFE CARE CENTERS OF AMERICA,          )
INC.,                                  )
                                       )
                    Defendant          )

MEMORANDUM AND ORDER WITH REGARD TO
PLAINTIFF'S MOTION TO REMAND
(Document No. 10)
December 18, 2013

NEIMAN, U.S.M.J.

Presently before the court is Alfred Bates ("Plaintiff")'s motion, pursuant to 28 U.S.C. § 1447(c), to remand this action to the Hampden County Superior Court where he originally filed his complaint.  Life Care Centers of America, Inc. ("Defendant") had removed this action under 28 U.S.C. § 1446, alleging that the amount-in-controversy requirement of 28 U.S.C. § 1332(a) was satisfied.

The parties have consented to this court's jurisdiction.  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the reasons which follow, Plaintiff's motion to remand will be allowed.

I. BACKGROUND

Plaintiff filed his complaint in state court on August 19, 2013, asserting a single Massachusetts common-law tort of wrongful termination in violation of public policy. In essence, Plaintiff alleges that he was fired because he refused to violate the Governor's February 8, 2013 executive order which banned motor vehicle travel for a short period of time during "the Blizzard of 2013." (Complaint (Document No. 1, Exhibit A) at 2-3.) In his Civil Action Cover Sheet, Plaintiff claimed $75,000, "full, itemized and detailed," as damages. (See Notice of Removal (Document No. 1) and Exhibit A.) That same amount was repeated as the "demand" in Defendant's Civil Cover Sheet when, claiming diversity jurisdiction, it removed the case to this forum on September 11, 2013. (See id. (Document No. 1, Exhibit B).) Plaintiff now seeks a remand, arguing that the removal was in error as Defendant is unable to sustain its burden of proving that more than $75,000 is at issue.

## II. STANDARD OF REVIEW

As it did in *Youtsey v. Avibank Manufacturing, Inc.*, 734 F. Supp. 2d 230 (D. Mass. 2010), the court begins with five well-established jurisdictional principles. First, it is long-settled that "[t]he party invoking federal question jurisdiction has the burden of establishing that the court has subject matter jurisdiction over the case." *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 48 (1st Cir. 2009) (citing cases). Thus, in a removal action such as this, the defendant has "the burden of showing the federal court's jurisdiction." *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999). Second, the federal courts have a particular "responsibility to police the border of federal jurisdiction," because "the Constitution limits the jurisdiction of federal courts, *see* U.S. Const. Art. III, and Congress has further narrowed our jurisdiction by

periodically increasing the amount-in-controversy minimum for diversity cases." *Spielman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir. 2001) (citing *Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 352 (7th Cir. 1995)).  Third, a plaintiff is deemed to be the "master" of his complaint. *Danca*, 185 F.3d at 4.  Fourth, as the First Circuit has repeatedly stated, the "removal statute should be strictly construed against removal." *Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 11 (1st Cir. 2004) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)); *accord Danca*, 185 F.3d at 4.  And fifth, it is well-established that "determining whether a case belongs in federal court should be done quickly, without an extensive fact-finding inquiry." *Spielman*, 251 F.3d at 4; *accord Amoche*, 556 F.3d at 50; *see also Coventry Seqage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 4 (1st Cir. 1995) ("[P]reliminary jurisdictional determinations should neither unduly delay, nor unfairly deprive a party from, determination of the controversy on the merits.").

With those principles in mind, the parties here agree that Defendant's burden in demonstrating that the amount in controversy exceeds $75,000, and thereby establishing federal jurisdiction, is one of "reasonable probability."  *Youtsey*, 734 F. Supp. 2d at 233; *see also Amoche*, 556 F.3d at 50 ("because questions of removal are typically decided at the pleadings stage where little or no evidence has yet been produced, the removing defendant's burden is better framed in terms of a reasonable probability, not a preponderance of the evidence") (quotation marks omitted).  Thus, in light of the pertinent provisions in section 1332(a), Defendant must prove that the amount in controversy "exceeds" $75,000 "exclusive of interest and costs." 28 U.S.C. § 1332(a).  Further, Defendant must do so in light of the Supreme Court's admonition that,

"unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Idem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *accord Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 41 (1st Cir. 2012).

### III.  DISCUSSION

Defendant posits several reasons why the $75,000 threshold has been exceeded.  First, Defendant avers that Plaintiff's potential back-pay alone is in excess of $91,000.  Maintaining that Plaintiff's back-pay damages do not stop when the action was removed from state court but, rather, should be calculated to the date of judgment, Defendant, through counsel, sets forth its analysis of a database for verdicts and settlements, the vast majority of which resulted in verdicts from three to five years after complaints were filed.  (See Affidavit of Christopher J. Campbell (Document No. 15).)  Defendant then utilizes an eight month figure between Plaintiff's discharge and the commencement of this suit, together with a "conservative estimate" of 100 weeks thereafter to get to trial, applies a weekly wage of $680, and concludes that potential back-pay comes to $91,392.  (Id. at 4.)  This amount, Defendant notes, does not include emotional distress damages, which Plaintiff also seeks.  Second, Defendant asserts that the court should not consider any "mitigation" to the $91,000, *e.g.*, post-termination earnings.  Defendant primarily relies on District Judge Wolf's recent decision in *Lucas v. Ultima Framingham LLC*, -- F. Supp. 2d --, 2013 WL 5405668 (D. Mass. Sept. 27, 2013), for both propositions.

Defendant also makes mention of its attempt to resolve Plaintiff's motion to remand by suggesting that he stipulate that his damages would *not* exceed $75,000, an

offer which Plaintiff declined. In light of that declination, Defendant argues, the court should be skeptical of Plaintiff's position that his claim lacks a reasonable probability of exceeding $75,000. In a bit of repartee, Plaintiff proposed to Defendant that, for the case to remain in federal court, the parties enter into a stipulation fixing his damages at an amount exceeding $75,000, despite his pre-litigation settlement demand of $40,000. Defendant, as might be expected, declined to do so. For its part, the court deems this all interesting jousting at best. More importantly for present purposes, the court is not persuaded that such offers and counteroffers, unless accepted, are at all determinative of a party's burden to prove the jurisdictional amount at issue with reasonable certainty, suggestions to the contrary notwithstanding. *See Jones v. Home Depot USA, Inc.*, 2013 WL 1282356, at *1 (D. Mass. March 29, 2013).

As the parties appear to agree, there is little question that potential back-pay can be considered when determining if the jurisdictional threshold has been met. *See, e.g., Hardemon v. City of Boston*, 144 F.3d 24, 28 (1st Cir. 1998). In turn, it is not inappropriate to consider the "expected duration of litigation in deciding the overall amount in controversy." *Lucas*, 2013 WL 5405668, at *4. In *Lucas*, for example, the court, utilizing information provided by the plaintiff that parties generally reached settlement within eight months to two years, determined that it would therefore be reasonable to expect resolution by trial of between eight months and "several years." *Id.* at *5.

The *Lucas* court, however, rejected the plaintiff's argument there that "the amount-in-controversy analysis should account for any potential reduction in the amount of damages to be awarded because of plaintiff's effort to mitigate his loss." *Id.* The

court reasoned that, since the burden of proving a failure to mitigate damages falls upon the defendant, it is not appropriate to reduce the amount-in-controversy via such an affirmative defense. The court also noted, however, that the plaintiff "ha[d] not provided any evidence of earnings after he was terminated." *Id.* "Therefore," the court concluded, it "would have no basis on which to reduce the potential award to him if an offset for post-termination earnings was permitted." *Id.* Here, it should be noted, Defendant has asserted failure to mitigate as an affirmative defense.

With respect, the court does not entirely agree with the *Lucas* analysis, at least as proffered by Defendant. First, analyzing the question of a back-pay offset in terms of a failure-to-mitigate affirmative defense seems more confusing than clarifying. Second, although the court recognizes that, in appropriate circumstances, potential back-pay should be considered when determining the amount-in-controversy, it does not agree that a plaintiff's actual earnings should be precluded as a potential offset, as Defendant suggests. Indeed, the *Lucas* court itself appears to draw a distinction between the "potential" reduction in damages because of a plaintiff's earnings and actual "evidence" of such earnings. *Id.* Other courts have been far more explicit "that amounts a plaintiff has *actually* earned by way of mitigation must be deducted from the amount in controversy" when determining jurisdiction. *Bush v. Roadway Express, Inc.*, 152 F. Supp. 2d 1123, 1127 (S.D. Ind. 2001) (emphasis added) (citing *Terry v. Serv. Corp. of Am.*, 990 F. Supp. 476, 477 (N.D. Miss. 1987); *Birkenbuel v. M.C.C. Constr. Corp.*, 962 F. Supp. 1305, 1306 (D. Mont. 1997)); *see also Fusco v. Victoria's Secret Stores, LLC*, 806 F. Supp. 2d 1240, 1243-44 (M.D. Fla. 2011) ("[M]ost courts consider mitigation when calculating back pay if the plaintiff submits affidavits or other evidence specifying

the amount of mitigation.") (citing as an example *Destel v. McRoberts Protective Agency, Inc.*, 2004 WL 746293, at *4 (S.D. Fla. Feb. 17, 2004)).  This court agrees with that explicit approach.  To be sure, as Defendant argues, the calculation is somewhat more complicated than fixed-sum cases, *see, e.g., Clark v. Nat'l Travelers Life Ins.Co.*, 518 F.2d 1167 (6th Cir. 1975) (dispute over a $10,000 insurance policy), but it is no less doable.

This court also concludes that the rationale for the consideration of earnings applies equally to the unemployment compensation being received here by Plaintiff. After all, such compensation may be considered when determining a successful plaintiff's back-pay award.  *See, e.g., Townsend v. Grey Line Bus Co.*, 597 F. Supp. 1287, 1293 (D. Mass. 1984) (deducting unemployment benefits from back-pay award); *Thurber v. Jack Reilly's Inc.*, 521 F. Supp. 238, 242-43 (D. Mass. 1981) (same); *see also Lussier v. Runyon*, 50 F.3d 1103, 1109 (1st Cir. 1995) (stating in dicta "we tend to agree with those courts that have held the interplay between collateral benefits and back pay to be a matter within the district court's discretion").  Plaintiff applied for and was awarded post-termination unemployment benefits, albeit after an administrative hearing because of Defendant's opposition to his application.  Although the amount of his weekly benefits and their duration have not been specified, Plaintiff's counsel asserts that it would be no less than $300 weekly and would last for approximately one year.  (See Declaration of Nathan A. Olin (Document No. 19) at 1 through 4).)  This appears to be correct.  *See* MASS. GEN LAWS ANN. ch 151A, § 29 (describing unemployment benefits for an individual with an average weekly wage in his or her base period exceeding sixty-six dollars as being paid "for each week of unemployment in an

amount equal to fifty percent of his average weekly wage in the base period"); MASS. GEN LAWS ANN. ch 151A, § 30 (outlining total state benefits available for receipt during a benefit year); MASS. GEN LAWS ANN. ch 151A, § 30A (federal extended benefits program).

As to its specifics, Defendant's calculation of Plaintiff's potential back-pay is both creative and detailed; in the court's estimation, however, it is not persuasive. The "verdicts and settlements" database of Massachusetts Lawyers Weekly deals only with "reported" verdicts and settlements; by its own definition, it does not include the countless cases which are settled without public notice. Second, given the infrequency with which cases go to trial in this district and others, the court ought not rely on Defendant's calculation regarding the length of time to get to trial as representative of the time within which the vast majority of cases are resolved. Third, Defendant's calculations, although focused on employment and labor cases, do not address the relative simplicity of this one-count complaint, a common-law tort claim alleging wrongful termination in violation of public policy. And fourth, it appears that at least one part of Defendant's calculation is wrong. Defendant assumes that Plaintiff's complaint was filed in September of 2013, eight months after his discharge on February 8, 2013. (See Affidavit of Christopher J. Campbell (Document No. 15 at ¶15).) Actually, Plaintiff's complaint was filed in state court on August 16, 2013, and removed to federal court on September 11, 2013. Thus, the amount of back-pay in the intervening 26.5 weeks (not the estimated 34.4 weeks) would be $18,020 (not $23,392). (See id.; see also Defendant's Opposition (Document No. 14) at ¶ 4.) Thus, even were the court to accept

Defendant's approach, the total amount of back-pay, including as much as 100 weeks to get to trial, would be $86,020, not $91,392.

Obviously, were the court to utilize the lower eight months post-filing time period, as had the court in *Lucas* (albeit with the treble damages unavailable here), the total amount of back-pay would be $41,412 ($23,392 for the post-filing period plus $18,020 for the pre-filing period). In any event, once Plaintiff's estimated unemployment compensation for one year of $15,600 (using a modest $300 weekly amount) is taken into account, as this court deems appropriate, the amount of back-pay, even at the high end of Defendant's calculation, would fall to $70,420, clearly below the $75,000 threshold. The back-pay in controversy would fall even more significantly, *i.e.*, to $25,812, were the eight month time span utilized.

To return to the five jurisdictional principles set forth above. First, the plaintiff is deemed to be the "master" of his complaint. *Danca*, 185 F.3d at 4. Here, Plaintiff chose to seek redress in state court and claim only $75,000 in potential damages, not one penny more, although that amount is not necessarily binding on this court. *Cf. Amoche*, 556 F.3d at 49 n.2. Second, the court has a particular responsibility "to police the border" of its jurisdiction given the fact that federal courts are courts of limited jurisdiction, *Spielman*, 251 F.3d at 4, hence the exercise in which the court has just engaged. Third, the "removal statute should be strictly construed against removal," *Rossello-Gonzalez*, 398 F.3d at 11, as the court is prepared to do here. Fourth, and most importantly, the party invoking jurisdiction has the burden of establishing jurisdiction over the case. *Amoche*, 556 F.3d at 48. Here, for the reasons stated, Defendant has failed to demonstrate with reasonable probability, not possibility, that the

amount in controversy exceeds $75,000.  And fifth, the court, as directed by the First Circuit, has endeavored to undertake this jurisdictional question expeditiously, without more extensive fact-finding than has been offered by the parties, and has concluded that federal jurisdiction is absent.

### IV.  CONCLUSION

For the reasons stated, Plaintiff's motion insofar as it seeks a remand is ALLOWED.  Plaintiff's request for costs, expenses and attorney's fees, however, is DENIED.

SO ORDERED.

December 18, 2013

                                                     /s/   Kenneth P. Neiman
                                                  KENNETH P. NEIMAN
                                                  U.S. Magistrate Judge